## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| GENERAL PARKER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KEVIN LYONS, individually and in his ) <br> official capacity as State's Attorney for ) <br> Peoria County; DEBBIE WOLFMEYER, ) <br> individually and in her capacity as a ) <br> Member of Peoria District 150 School ) <br> Board; PEORIA COUNTY ) <br> GOVERNMENT; and TENTH ) <br> JUDICIAL CIRCUIT, ) <br> ) <br> Defendants. ) | Case No.   11-cv-1441 |

## O R D E R  &  O P I N I O N

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 30). Plaintiff filed a Response in opposition (Doc. 33). For the reasons stated below, Defendants' Motion is granted in part and denied in part.

### PROCEDURAL HISTORY

Plaintiff filed his Complaint pro se on December 2, 2011, stating multiple claims against various defendants. (Doc. 1). Defendants all filed motions to dismiss, which resulted in most of the defendants and claims being dismissed from the case. (Doc. 28). The Court, noting numerous deficiencies in the original Complaint, ordered Plaintiff to file an amended complaint. In the interim, Plaintiff obtained counsel and is now represented. He filed the Amended Complaint through his

attorney[1] on January 30, 2013. (Doc. 29). The two remaining Defendants, Kevin Lyons and Peoria County Government,[2] filed a Motion to Dismiss for failure to state a claim upon which relief can be granted on March 1, 2013. (Doc. 30).

## BACKGROUND[3]

Plaintiff, in his Amended Complaint, raises constitutional violations based on the actions relating to his ban from running for a school board seat and seeks relief pursuant to 42 U.S.C. § 1983. In 2010, Plaintiff, a black male, decided to run for a seat on the District 150 School Board in Peoria, Illinois. He filed a nominating petition on December 13, 2010, containing the requisite number of signatures. No objections were filed with the state Election Board; however, on February 21, 2011, less than a week before the ballots were to be printed, Plaintiff was served with a complaint for a state *quo warranto*[4] action against him, seeking to have his name removed from the ballot and preventing him from running for the school board. The complaint, filed by the Peoria County State's Attorney at the time, Defendant Kevin Lyons, alleged that because of Plaintiff's felony theft conviction from 1984, he was

---

[1] As such, Plaintiff no longer benefits from the liberal pleading standard afforded pro se plaintiffs.
[2] As noted in the Court's previous Order, Peoria County Government is a necessary party under *Carver v. Sheriff of LaSalle County, Illinois*, 324 F.3d 947, 948 (7th Cir. 2003), in which the court held "a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer . . . in an official capacity." Plaintiff also makes clear in the Amended Complaint that it alleges liability based on the actions of Defendant Lyons as an individual with final policymaking authority. (Doc. 29 at 15). Because he is the primary actor involved, all future references to a singular Defendant refer to Defendant Kevin Lyons.
[3] Applying the legal standard set forth below, the facts are taken from Plaintiff's Amended Complaint and all reasonable inferences are drawn in his favor.
[4] A *quo warranto* action is generally used to remove someone who holds office unlawfully, among other things. 735 Ill. Comp. Stat. 5/18-101.

2

ineligible to hold a school board seat under Illinois law. Two days later, after a hearing, the Peoria County Circuit Court found Plaintiff was ineligible to hold a seat on the school board, enjoined him from running, and ordered his name off the ballot. Defendant Wolfmeyer, a white woman, later won the school board seat for which Plaintiff intended to run.

In the Amended Complaint, Plaintiff raises three claims. In Count I, he brings a Fourteenth Amendment "Class-of-One" Equal Protection claim. He alleges Defendant selectively targeted Plaintiff for the *quo warranto* action, a rarely-used enforcement mechanism, presumably because of his reputation as an outspoken leader in the community. Count II is a Fourteenth Amendment Equal Protection claim alleging racial discrimination. Plaintiff alleges he was targeted to be removed from the school board election to preserve a white majority on the school board, and that other white candidates for various local elected offices are or have been ineligible but were not subject to *quo warranto* actions or other challenges by the State's Attorney. In Count III, Plaintiff generally challenges the constitutionality of the state laws preventing someone with a prior felony conviction[5] from running for school board, citing the First, Thirteenth, Fourteenth, and Fifteenth Amendments.[6]

---

[5] Plaintiff uses the term "ex-felon" to refer to an individual who was convicted of a felony but has completed his sentence, implying that he distinguishes in his legal arguments between felons who have not completed their sentences and those who have. (Doc. 33 at 4). Unless a distinction becomes necessary, the Court will use the term "felon," which means "[a] person who has been convicted of a felony." *Black's Law Dictionary* 651 (8th ed. 2004).

[6] Plaintiff, in his Response, indicates that he believes he also raised a First Amendment retaliation claim. (*E.g.*, Doc. 33 at 1). Though some of the allegations could support such a claim, the Amended Complaint clearly raises only three claims, identified by headings, and a retaliation claim is not one of them.

3

## LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain sufficient detail to give notice of the claim, and the allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard requires enough facts "to present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545.

## DISCUSSION

Defendant makes several arguments for why Plaintiff's Amended Complaint should be dismissed for failure to state a claim. Plaintiff's claims will be addressed in turn. Additionally, Defendant argues that portions of Plaintiff's Amended Complaint are immaterial, as they concern issues the Court has already determined it cannot rule upon, and seeks to have them stricken.

Before turning to the claims, a preliminary argument related to Counts I and II must be addressed. Defendants imply that because the pleading reveals legal grounds for the *quo warranto* action, it cannot have violated the Equal Protection clause. (Doc. 31 at 3-4). This argument is without merit. In an analogous selective prosecution claim, simply because there was a lawful basis for the prosecution does not mean there is no claim. If the prosecution was instigated because of an improper discriminatory motive, it can still violate the Equal Protection clause. *See United States v. Armstrong*, 517 U.S. 456, 463-65 (1996); *Rogers v. Ill. Dep't of Corr. Special Evaluation Unit*, 160 F. Supp. 2d 972, 980-81 (N.D. Ill. 2001).

As a further preliminary matter, Plaintiff's cursory argument, without any supporting citations, that Defendant's Motion should be stricken as procedurally improper, is without merit. Presumably, he is referring to Rule 12(g)(2), limiting the scope of subsequent motions to dismiss. However, this rule does not prohibit a later motion for failure to state a claim challenging an amended complaint. *See Ennenga v. Starns*, 677 F.3d 766, 772-73 (7th Cir. 2012). Further, the Court invited Defendants to file such a motion. (Doc. 28 at 19). Thus, it was procedurally proper and is not stricken.

### *Count I: Class-of-One Equal Protection Claim*

In addition to protecting members of protected classes from unequal treatment, the Equal Protection clause has been applied to prohibit "state action that irrationally singles out and targets an individual for discriminatory treatment as a so-called 'class-of-one.'" *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941-43 (7th Cir. 2010). A plaintiff bringing a class-of-one equal protection claim

5

must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

As evidenced by a recent fractured opinion in the Seventh Circuit, "[t]he law concerning 'class of one' equal-protection claims is in flux," particularly when it comes to the pleading requirements. *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887, 888 (7th Cir. 2012). In the *Del Marcelle* case, the "lead" opinion, with four votes, proposed that a plaintiff should have to show that "he was the victim of discrimination intentionally visited on him by state actors who knew or should have known that they had no justification, based on their public duties, for singling him out for unfavorable treatment—who acted in other words for personal reasons, with discriminatory intent and effect." *Id.* at 889. The dissent, with five judges, suggested that to sufficiently plead a class-of-one case, the complaint must include "plausible allegations about the following elements: (1) plaintiff was the victim of intentional discrimination, (2) at the hands of a state actor, (3) the state actor lacked a rational basis for so singling out the plaintiff, and (4) the plaintiff has been injured by the intentionally discriminatory treatment." *Id.* at 913 (Wood, J., dissenting).

Some Seventh Circuit cases have required an additional "illegitimate animus" showing, while others have allowed animus to replace irrationality as an element. *See Del Marcelle*, 680 F.3d at 912-13 (Wood, J., dissenting). The *Del Marcelle* dissent suggests animus is more properly considered factual support to make irrationality more plausible instead of a separate element. *Id.* at 913.

6

Fortunately, because Plaintiff has pled animus and his claim fails for other reasons, this issue need not be resolved.

Defendants argue that because the State's Attorney's actions in choosing whether and how to enforce election requirements are discretionary, a class-of-one claim cannot be brought for treating like individuals differently in that context. They cite *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), in support of their proposition. In *Engquist*, the Court held that class-of-one equal protection claims are not available in the context of public employment. *Id.* at 609. In explaining their reasoning, the Court used language Defendants now borrow, stating:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 603. The Court gave an example of a traffic officer giving speeding tickets to only some speeding vehicles, then stated that "[i]t is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized." *Id.* at 603-04. The Seventh Circuit, applying this reasoning, found the decision of where to extend water mains was based on subjective and individualized assessments without clear standards for decisionmaking, and that a class-of-one claim was therefore likely not cognizable. *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 945 (7th Cir. 2009). Similarly, the court found a class-of-one claim

7

inapplicable to selective prosecution because there is no standard by which to compare exercises of prosecutorial discretion. *United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008). This is because the exercise of such discretion inherently involves subjective, individualized decisions. *See Del Marcelle*, 680 F.3d at 897-98.

As State's Attorney, Defendant's duty, among other things, was to "commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned." 55 Ill. Comp. Stat. 5/3-9005(a)(1). As in the criminal context, a State's Attorney could not feasibly pursue every single possible action in which the public may be concerned. A State's Attorney's decision of what actions to commence, even in the civil context, is inherently an exercise of discretion and is an individualized and subjective decision. In fact, Illinois state courts have stated that "in matters of purely public interest," officials such as the State's Attorney "have complete, arbitrary and unfettered discretion as to whether they shall institute [*quo warranto*] action[s]." *Henderson v. Miller*, 592 N.E.2d 570, 574 (Ill. App. Ct. 1992).

The Court finds that Defendants' challenged discretionary decision is closely analogous to *Moore* and comes within the reasoning from *Engquist* laid out above, such that Plaintiff's class-of-one claim is not cognizable. In suing Plaintiff in a *quo warranto* civil action to seek his removal from the ballot, Defendant was not exactly acting in his prosecutorial role. Thus, *Moore* is not directly on point. On the other hand, Defendant was also not making a routine decision about the application of town ordinances following set standards, which would typically allow for a class-of-one claim, as in *Olech*. Though not required by the holding of *Moore*, the Court finds

that, applying the reasoning the Supreme Court described in *Engquist* and later applied by the Seventh Circuit in *Srail* and *Moore*, Plaintiff cannot challenge Defendant's discretionary decision to institute a *quo warranto* action through a class-of-one equal protection claim. Defendant is granted wide discretion to make this inherently subjective and individualized decision. Thus, Count I is dismissed with prejudice.

### *Count II: Race Discrimination Equal Protection Claim*

In the context of discrimination claims, the Seventh Circuit has reaffirmed that there is not a heightened pleading requirement, and that recent Supreme Court precedent discussing pleading standards is not to the contrary. *Swanson*, 614 F.3d at 403-05. The court noted that none of the notable decisions called the Rule 8 notice pleading standard into doubt, and explained that in "many straightforward cases, it will not be any more difficult today for a plaintiff to meet that burden than before the Court's recent decisions." *Id.* at 404. However, in complicated discrimination cases, additional factual allegations will be necessary to raise the claim to the plausible level. *See, e.g.*, *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 887 (7th Cir. 2012).

Plaintiff has alleged the circumstances leading to his discrimination claim in ample, perhaps even excessive, detail. He alleged his history of speaking out against Defendant's policies that he believed were racist, chronicled his campaign for school board, and described the state court action Defendant undertook to remove him from the ballot. He also alleges that five white individuals who were ineligible for office were treated more favorably than Plaintiff. He claims he was treated

differently by Defendant because he is black. The Court finds this is sufficient to give notice of the claim to Defendants and to plausibly suggest a right to relief from racial discrimination. *See generally Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008) (describing the factual allegations sufficient to state a gender discrimination claim). Plaintiff presents a plausible claim, with sufficient factual allegations to satisfy federal pleading standards.

Defendants take particular issue with Plaintiff's failure to allege individuals who are sufficiently similarly situated to support an equal protection claim. A plaintiff should include allegations showing similarly situated individuals that were treated more favorably. *See id*. Though typically a fact question, the Seventh Circuit has held that where the complaint fails to allege facts "tending to show that [the plaintiff] was similarly situated to any of the comparators," or the pleadings or plaintiff's briefs show material differences, an equal protection claim may be properly dismissed. *See LaBella*, 628 F.3d at 942. *But see Geinosky v. City of Chi.*, 675 F.3d 743, 748 n.3 (7th Cir. 2012) ("Even in a case where a plaintiff would need to identify a similarly situated person to prove his case . . . we see no basis for requiring the plaintiff to identify the person in the complaint.").

Whether or not it was required in order to state his equal protection claim, Plaintiff has made allegations of similarly situated people of a different race,[7] and the pleadings do not reveal material differences between Plaintiff and all of his

---

[7] Defendants also point out that Plaintiff "never actually uses the phrase 'similarly situated.'" They do not expand on this comment, but the Court notes that this statement is inconsequential. Defendants clearly understood that Plaintiff pointed to allegedly similarly situated individuals, even without spelling it out with the legal terminology. The Court will not elevate form over substance.

alleged comparators. Though Defendants point to distinctions between Plaintiff and the other individuals, it is not clear that these differences are material. Further, resolution of such fact questions is appropriate at a later stage, not in a motion to dismiss. As Defendants raised no other ground for dismissing this claim, it will not be dismissed.

*Count III: Constitutionality of State Law*

Count III alleges that the law prohibiting individuals with prior felonies, such as Plaintiff, from holding a school board position[8] is unconstitutional.[9] Confusingly, Plaintiff cites four different constitutional amendments that may be implicated within this one count. Not all of these provisions lend support to Plaintiff's claim, but as explained below, Count III adequately states the claim of a constitutional violation and will not be dismissed.

---

[8] As Defendants note, Plaintiff does not state which specific statute he is challenging, but based on the other allegations in the Amended Complaint, it is clear he is referring to the laws that were applied to bar him from running for office. This apparently includes at least three different provisions: 10 Ill. Comp. Stat. 5/29-15, 5 Ill. Comp. Stat. 280/1, and 105 Ill. Comp. Stat. 5/10-11. (*See* Order, Case No. 3-11-0140, 2012 IL App (3d) 110140-U, Doc. 10-1 at 3-4). As it is a matter of public record, consideration of the appellate court order does not convert Defendants' Motion to one for summary judgment. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

[9] Count III could also be read to include a claim that Defendant's discriminatory actions in choosing to challenge Plaintiff's candidacy because of his race was also discrimination against the entire black community and violated their constitutional rights. (*See* Doc. 29 at 10, 16-18). If that is Plaintiff's intent, the claim is insufficiently pled and is dismissed. Count III survives only as a claim challenging the law itself, not Defendants' actions.

Two of the provisions Plaintiff cites could plausibly support his claim for relief: the First Amendment[10] and the Fourteenth Amendment Equal Protection clause. The allegations clearly suffice to give notice of his claim. Further, a claim that the law prohibiting felons from holding a school board seat violate the First and Fourteenth Amendments, either facially or as applied, is plausible. Defendants point to nothing that would show Plaintiff cannot obtain relief on this claim. Simply because felons may be barred from voting without offending the Constitution, *Richardson v. Ramirez*, 418 U.S. 24, 54-55 (1974), does not necessarily mean they may also automatically be barred from running for or holding public office. Absent further briefing on the legal issues, the Court cannot conclude that Plaintiff's claim cannot prevail as a matter of law.

However, to the extent Plaintiff also seeks relief under the Thirteenth and Fifteenth Amendments as distinct claims, they must be dismissed. Though Congress has the authority to abolish "badges and incidents" of slavery under the Thirteenth Amendment, *The Civil Rights Cases*, 109 U.S. 3, 20 (1883), the Supreme Court has not found the amendment by its own terms to do anything more than abolish slavery. *See Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 439 (1968); *Alma Soc'y Inc. v. Mellon*, 601 F.2d 1225, 1237 (2d Cir. 1979). Plaintiff cites no federal legislation to support his claim, and cannot possibly allege that the state law prohibiting felons from holding a school board position is slavery. Thus, any Thirteenth Amendment claim is dismissed.

---

[10] Of course, the Court recognizes that the relevant First Amendment protections are only applicable through incorporation via the Fourteenth Amendment, but discusses it separately for simplicity.

Plaintiff similarly misses the mark in his references to the Fifteenth Amendment. First, this provision on its face only protects the right to vote. Some cases have indicated that the ability to vote for the candidate of one's choice is related to the right to vote, but such analysis generally occurs not in Fifteenth Amendment cases, but rather in the context of challenges to laws limiting ballot access and candidacy under the First and Fourteenth Amendments. *See, e.g.*, *Bullock v. Carter*, 405 U.S. 134, 142-43 (1972). Second, absent related federal legislation, Fifteenth Amendment violations require a showing of discriminatory intent. *See, e.g.*, *City of Mobile, Ala. v. Bolden*, 446 U.S. 55, 62 (1980). Plaintiff points only to the disparate impact of a law preventing felons from running for public office, and that Defendant intentionally discriminated against him in applying it. He does not allege that the law was *enacted* with the intent of discriminating against black individuals. Further, his citations to Illinois state court cases in his brief, interpreting the state constitution, are inapplicable.

Count III, insofar as it alleges that the state law preventing Plaintiff from holding and running for a school board seat on the basis of his past felony is invalid as it contravenes the First and Fourteenth Amendments, has been adequately pled and is not dismissed. That is not to say this claim has merit. Defendants may well be able to show, with additional briefing at a later stage, that this claim is foreclosed as a matter of law. For now, it is enough that the claim is adequately pled and is plausible.

*Stricken Paragraphs*

Defendants alternatively seek to strike portions of Plaintiff's Amended Complaint as immaterial. Rule 12(f) allows the Court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A district court has considerable discretion when deciding whether or not to strike material. *See Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). The paragraphs Defendants seek to have stricken relate to the state court proceedings and Plaintiff's argument, already rejected by this Court, that the proceedings were improper or invalid. As explained in the previous Order, under the *Rooker-Feldman* doctrine, this Court does not have jurisdiction to entertain a claim that the state court interpreted the applicable provisions incorrectly or that the proceedings violated Plaintiff's due process rights. (Doc. 28 at 10-15).

The Court takes Defendants' point seriously, and takes the opportunity to warn Plaintiff that any future attempts to resurrect these arguments will be strongly disfavored. Plaintiff shall not continue to argue that state law does not prevent him from running for office or that the *quo warranto* action was improper, as he did in his brief. The state court determined otherwise, and this Court has no authority to question that. However, not all of the paragraphs Defendants challenge as immaterial are actually immaterial. To succeed in his race discrimination claim, evidence of the unusual nature of Defendant's actions in the *quo warranto* proceedings, including evidence that it has never been used in this context before, could potentially be useful to show intent and motive, or at least may not be

immaterial. However, any attempt to question the validity of the *quo warranto* proceeding or the state court's application of law are truly immaterial to Plaintiff's claim and will be stricken. To that end, paragraphs 29, 30, 41, 42, 44-51,[11] 79-84, 88, 89, and 100-102 are stricken from the Amended Complaint.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. 30) is GRANTED IN PART and DENIED IN PART. Count I is DISMISSED WITH PREJUDICE. To the extent Plaintiff raises a Thirteenth Amendment or Fifteenth Amendment claim, these claims are also DISMISSED WITH PREJUDICE. Paragraphs 29, 30, 41, 42, 44-51, 79-84, 88, 89, and 100-102 are STRICKEN from the Amended Complaint. This matter is REFERRED back to Magistrate Judge Gorman for further pretrial proceedings.

Entered this 15th day of April, 2013.

                                 s/ Joe B. McDade
                                 JOE BILLY McDADE
                                 United States Senior District Judge

---

[11] Defendants did not ask to have paragraph 51 stricken. For the same reasons argued by Defendants, the Court finds this additional paragraph immaterial and strikes it on its own pursuant to Rule 12(f)(1).